IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND


HOWARD HINES, #171222             *
               Plaintiff,
      v.                 *   CIVIL ACTION NO. PJM-10-3315

LT. B.A. WILT, et al.          *
              Defendants.
                    ***

**MEMORANDUM OPINION**

Plaintiff Howard Hines (Hines) is suing Defendants Lieutenant B.A. Wilt and Warden

Bobby Shearin.[1]  Defendants, by their counsel, have filed a Motion to Dismiss or, in the

Alternative, for Summary Judgment with verified exhibits (ECF No. 16) to which Hines has filed

a response in opposition. (ECF No. 25). The issues are fully briefed, and the Court now rules

pursuant to Local Rule 105.6 (D. Md. 2011), no hearing being necessary.  For the following

reasons, Defendants' Motion for Summary Judgment [2] will be granted.

## I.  PLAINTIFF'S CLAIMS

Hines, an inmate at North Branch Correctional Institute (NBCI), claims Defendants have

violated his rights under 42 U.S.C. § 1983, the Americans with Disabilities Act (ADA), 42

U.S.C. § 12101 and the Religious Land Use and Institutionalized Person Act (RLUIPA), 42

U.S.C. § 2000cc 1 (A), 2 (A).

Hines claims that when he was transferred from to NBCI,  Defendants  were informed of

his medical conditions, but "displayed total disregard for his medical condition by maliciously

and intentionally assigning him to a cell on the top tier which required him to walk a flight of

---

[1] Service was not obtained on Defendant John Doe. Hines provides no evidence apart from his conclusory allegations to support his claim that "John Doe" acted with requisite deliberate indifference to his serious medical needs. Actions that might be considered negligent do not meet the requisite standard of deliberate indifference for a violation of constitutional magnitude.

[2] The pleading will be treated as a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure because materials outside the four corners of the pleadings have been considered.  *See*

stairs." Complaint, p. 3, ¶ 9. He alleges Defendant Wilt threatened to put him in segregation

lock-up if he did not accept the cell assignment. Complaint, p. 4. Hines states on June 19, 2009,

he fell down the stairs and hurt his back. Complaint, p. 3, ¶ 13. He claims that received little or

no treatment from medical providers. *See id.* Hines indicates that he previously suffered a stroke

and medical providers at Jessup Correction Institution (JCI) prescribed a wheelchair and cane for

him and recommended bottom tier placement on two occasions. Complaint, p. 3, ¶ 8.

       Hines's § 1983 claims are that Defendants were deliberately indifferent to his medical

needs because: 1) the institution failed to perform a medical intake evaluation; 2) Defendants

ignored doctor's recommendations that Plaintiff avoid using stairs; 3) Defendant Wilt forced him

to use stairs against his will and against doctor recommendation; 4) Defendant Shearin acted in

concert with other officers "in a racist policy of disregarding any and all orders coming out of

the Jessup region, as most of the staff and medical personal [sic] are black" (Complaint, p. 4, ¶

16); 5) Hines fell and sustained injuries while using the stairs and received little to no treatment;

and 6) as a consequence of his fall, Hines suffered pain and also mental and emotional distress.

Hines claims after he was later located to a bottom tier cell, Defendant Shearin "deliberately

lied" stating there was no medical order to place Hines on bottom tier or bottom bunk status.

Complaint, p. 4, ¶ 18. Hines also claims Defendants are liable under the Americans with

Disabilities Act for negligently and inadequately treating injuries he allegedly sustained from the

fall. Lastly, Hines raises a claim under the Religious Land Use and Institutionalized Persons Act

of 2000 (RLUIPA), 42 U.S.C. §§ 2000cc *et seq.* in which he alleges a covert policy of racial

discrimination against transferred from Jessup Correctional Institution, a violation of the

Fourteenth Amendment. Complaint, p. 9.

---

*Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007).

As redress, Hines seeks $75,000.00 in monetary or compensatory damages. He also seeks $150,000.00 in punitive damages jointly or $20,000.00 severely from each Defendant.  He also seeks indemnity of $40,000.00 against Defendants Shearin and Wilt each. *See id.*

## II.  FACTS

Hines was transferred from Western Correctional Institution (WCI) to NBCI on June 16, 2009, and a medical evaluation was performed at NBCI that same day. Exhibit A, Declaration of Randy Durst, pp. 4, 6-9.  Medical evaluations are performed only by state contractual medical professionals; corrections staff play no role in the medical evaluation process. Exhibit B, Declaration of Bobby Shearin, ¶5; *See also* Exhibit A, pp. 6-9. The medical screening process initially determines whether an inmate is being treated for any medical, dental, or mental health problems. Exhibit A, pages 6-9.  Medical staff makes visual observations of the inmate, noting general appearance, hygiene, mood, any physical deformities, and evidence of abuse or trauma.  *See id.* pp. 6 and 9.  Additionally, medical staff note medications the inmate is taking and give inmates an opportunity to present their medical, dental, or mental health concerns. Exhibit A, pages 6-9.

Hines' intake evaluation record shows he was being treated for cholesterol, high blood pressure, and asthma.  *See id.*  pp. 6-9.  Hines did not present complaints of other medical problems and no physical deformities were noted.  *See id.*, page 6, 9. It was recommended that Hines be given a cane. There was no recommendation that Plaintiff be assigned to a cell on the bottom floor of a prison tier.  *See id.*, pp. 6 and 9.  The only housing recommendation made was to place Hines in general inmate housing. *See id.* p. 6.  The Court notes that Hines' transfer information from WCI indicated that on November 7, 2008, a cane and wheelchair were ordered for him at WCI. *See id*, p. 7.

On June 19, 2009, Hines was seen by the medical staff after he had fallen down stairs. The medical record shows Hines did not complain of pain, numbness, or swelling. He did not ask medical providers to move him to a different cell, and no recommendation was issued to place him on the bottom tier. *See id*., pp. 10-12. Medical providers did note, however, that Hines had previously suffered a stroke which affected his right side. *See id*, p.10.

Plaintiff complaints that Lt. Wilt saw Hines at the medical unit and demanded to know why he was out of his cell. Lt. Wilt told Hines "I don't want to hear nothing but you go lock in your cell right now." Plaintiff's Response, p. 4.

On June 25, 2009 corrections staff transferred Hines to a bottom tier cell and assigned him to the bottom bunk bed on June 25, 2009. *See id*. ¶ 5. On July 15, 2009, medical staff formally recommended bottom tier cell and bottom bunk placement for Hines. *See id*. pp.13 and 15. He remains assigned to the bottom tier at NBCI. *See id*.

Hines filed no requests for administrative remedy procedure request regarding his cell assignment or failure to perform a medical evaluation upon arriving at NBCI. Exhibit C, Declaration of Jared Zais, ¶ 5.

### III. STANDARD OF REVIEW

Fed.R.Civ.P. 56(a) provides:

A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

Summary judgment is appropriate when there is no genuine issue as to any material fact, and the moving party is plainly entitled to judgment in its favor as a matter of law. In *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249(1986) the Supreme Court explained that in considering a

motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id*. at 252.

The moving party bears the burden of showing that there is no genuine issue as to any material fact. No genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. *See  Celotex Corporation v. Catrett*, 477 U.S. 317, 322–23 (1986). Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

 In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in a light most favorable to the party opposing the motion." *Matsushita Electric Industrial. Co. Ltd. v. Zenith Radio Corporation*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc*., 369 U.S. 654(1962)).  The mere existence of a "scintilla" of evidence in support of the non-moving party's case is not sufficient to preclude an order granting summary judgment. *See Anderson*, 477 U.S. at 252.

A "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala*, 166 F.Supp.2d 373, 375 (D.Md.2001) (citation omitted).  Indeed, the court has an affirmative obligation to prevent factually unsupported claims

and defenses from going to trial. *See Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir.1993)

(quoting *Felty v. Graves–Humpreys Co.*, 818 F.2d 1126, 1128 (4th Cir.1987)).

## IV.   DISCUSSION

### A.   § 1983 Claims

#### 1.        Cell Assignment

The gravamen of Hines' § 1983 claim is Defendants' failure to assign him to a bottom

tier when he arrived at NBCI, which he contends  constituted deliberate indifference to his

serious medical needs and violated his rights under the Eighth Amendment.  In order to state an

Eighth Amendment claim, Plaintiff must allege facts suggesting that objectively the deprivation

suffered or harm inflicted was " serious and that subjectively prison officials acted with a

sufficiently culpable state of mind. *See Johnson v. Quinones,* 145 F.3d 164, 167 (4th Cir.1998).

Plaintiff must demonstrate that Defendants acted with deliberate indifference to his serious

medical needs. *See Iko v. Shreve*, 535 F.3d  225, 241 (4th Cir. 2008). For a claim of deliberate

indifference to succeed, an official "must both be aware of facts from which the inference could

be drawn that a substantial risk of serious harm exists, and he must also draw the inference."

*Farmer v. Brennan*, 511 U.S. 825, 837 (1994) "Deliberate indifference is a very high standard—

a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th

Cir.1999) (citing *Estelle v. Gamble* 429 U.S. 97,105–06 (1976)).  Deliberate indifference

requires a plaintiff to allege facts that suggest a particular defendant actually knew of and

disregarded a substantial risk of serious harm to his person. *See Farmer,* 511 U.S. at 837.

Hines alleges that Defendants had possession of his medical files, knew he was required

to be housed on a bottom tier, and "maliciously and intentionally" ignored his needs to cause

harm to his health and safety.  Complaint, p.  4. ¶ 17.  Hines, however, provides no evidence

suggesting Defendants act value knew of his medical needs and acted with deliberate indifference to them.

Contrary to his assertions, Hines' exhibits do not show that he was recommended for bottom tier placement after NBCI medical transfer.[3] Upon arrival at NBCI, Hines was medically evaluated. No recommendation was made for bottom tier placement. Although Hines claims Jessup Correctional Institution (JCI) medical providers previously had recommended him for bottom tier placement, he provides no evidence to substantiate his assertion. Further, Hines does not indicate when he was an inmate at JCI [4] or when the claimed medical recommendation was issued by JCI medical providers.  At earlier noted, prison officials play no role in administering medical care at NCBI, deferring instead to the expertise of private medical providers. There is simply no evidence, apart from Hines unsubstantiated statement, that Defendants knew Hines had suffered a stroke and bottom tier placement was appropriate.  Further, there is no evidence that Defendants acted to intentionally and maliciously cause him harm. Prison officials are not liable for relying on the medical recommendations of medical personnel.  *See Miltier v. Beorn*, 896 F.2d  848, 854-55 (4th Cir.1990).  It follows that they cannot be liable where there was no recommendation for special cell housing based on a medical need.

Hines provides no reason why Defendants would be aware of the purported JCI recommendation, or why an earlier recommendation of unspecified date would supercede the later medical evaluation at NBCI.   It bears noting too, that when Hines was seen at the medical

---

3  Hines filed a copy of a June 19, 2009 ARP request in which he complained about his fall.  ECF No. 25, Exhibit 1. Hines also filed a copy of his July 16, 2009 ARP request, written more than one month after Hines was transferred to NBCI, complaining about his fall. The response from Warden Shearin indicated that at the time of the fall there was no medical order in place for bottom tier and bottom bunk status. ECF No. 25, Plaintiff's Exhibits 1 and 2. These exhibits fail to show that Defendants were aware of Hines' medical needs or acted with deliberate indifference to them in his initial cell assignment.

4  The portion of Hines' Offender Traffic History filed in this case shows he was incarcerated at WCI

unit for his fall, there was no record that he requested a bottom tier or was medically recommended for such placement..  In sum, the record shows that neither Defendant was aware of Hines needs nor acted with requisite deliberate indifference to constitute a constitutional violation. There is no genuine issue of material fact as to this claim, and Defendants are entitled to summary judgment in their favor as a matter of law.

### 2.      Verbal Threats

Hines next alleges Lt. Wilt deliberately assigned him to an upper tier cell and then threatened him with disciplinary sanctions if he refused his cell assignment.  Contrary to Hines assertions, there is no evidence that Hines was recommended for bottom tier assignment due to medical needs.   There are no facts suggesting Lt. Wilt actually knew of and disregarded a substantial risk of serious harm to Hines; rather, his direct order to accept housing or face discipline for insubordination comported with  general prison security and management needs. Further, verbal threats or harassment alone do not rise to the level of a constitutional violation. *See Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir.1979), cited in *Moody v. Grove*, 885 F.2d 865 (4th Cir.1989) (table) (unpublished) (stating as a general rule that verbal abuse of inmates by guards, without more, does not state a constitutional claim). Hines' fails to state a claim of constitutional magnitude and provides no grounds for relief.

### 3.      Supervisory Liability

There is no claim presented that Warden Shearin personally participated in Hines' cell assignment.  To the extent Warden Shearin is sued in his supervisory capacity, Hines fails to claim Shearin interfered with his medical evaluation, was aware of his medical needs, or

---

from November 7, 2008 until his transfer to NBCI on June 17, 2009. Exhibit A, p. 4.

otherwise actually knew of and disregarded a substantial risk of serious harm to him. Non-medical supervisory officials can only be liable where it is shown they failed to timely provide needed care, deliberately interfered with doctors' performance, or tacitly authorized or were deliberately indifferent to prison physicians' constitutional violations. *See Miltier*, 896 F.2d at 854–55.   Consequently, there is no basis for relief against Warden Shearin.

### B.  RLUIPA

Hines alleges Defendants violated RLUIPA by implementing a "racist covert type policy of disregarding medical orders, diagnoses, etc., approved out of the Jessup region." Complaint, p. 9. He provides no factual predicate for his otherwise conclusory allegation. RLUIPA provides the government cannot implement a land use regulation that places a substantial burden on the free exercise of religion.  *See* 42 U.S.C. 2000cc 1(A)-1(A).   Nowhere in the complaint does Hines allege his right to practice religion was burdened by Defendants.   Hines has failed to state a claim under RLUIPA.

### C.  ADA

The Americans with Disabilities Act provides that "no qualified individual with a disability shall, by reasons of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C.S. § 12132.  Title II of the ADA, 42 U.S. C. § 12131 addresses concerns arising in the context of public services including state prisons, *see Pennsylvania Dep't of Corrections v. Yeskey*, 524 U.S. 206, 212 (1998).

To state a prima facie claim under Title II of the ADA a plaintiff must show 1) that he has a disability; 2) that he is otherwise qualified for the benefit in question; and 3) that he was excluded from the benefit based on his disability.  *See Constantine v. George Mason University*,

411 F.3d 474, 498 (4th Cir. 2005) (citing *Baird v. Rose*, 192 F.3d 462, 467-70 (4th Cir. Va. 1999)).  The statute defines disability "a physical or mental impairment that substantially limits one or more major life activities of [an] individual." 42 U.S.C. § 12102(1) (A). Major life activities include, but are not limited to "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A).

Hines' claim of  an ADA violation fails as a matter of law. Specifically, Hines does not allege that he was denied the benefit of a service or program by NBCI due to a disability. To the extent Hines' contends his initial cell assignment constituted an ADA violation, he was placed in a lower tier cell just days after his transfer to NBCI.  Accordingly, Defendants are entitled to summary judgment in their favor.

## V.  CONCLUSION

For these reasons, the Court finds no genuine issues of material fact are presented and Defendants are entitled to summary judgment as a matter of law.  A separate Order follows this Memorandum Opinion.

_____/s/_____
PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE

February 13, 2012